AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung Smartphone Model SM-F926U
("Target Device 1")

Case No. '22 MJ3297

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 371 and 1952 | Conspiracy to Commit Interstate Travel in Aid of Racketeering ("ITAR" or "Travel Act") and ITAR |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Salvadore F. Selga, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: 09/08/2022

*Judge's signature*

City and state: San Diego, California

Honorable Allison H. Goddard
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, Salvadore F. Selga, Special Agent with Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of applications for search warrants to search the following electronic devices, as described in Attachments A-1, A-2, A-3, and A-4, and seize evidence of crimes, specifically, violations of Title 18, United States Code, Sections 371 and 1952, as further described in Attachments B-1, B-2, B-3, and B-4:

   a. Samsung Smartphone
      Model SM-F926U
      ("**Target Device 1**")

   b. Samsung Smartphone
      Model SM-A217M/DS
      ("**Target Device 2**")

   c. Samsung Smartphone
      Seizure No. 2022252000003101
      ("**Target Device 3**")

   d. Samsung Smartphone
      Seizure No. 2022252000003501
      ("**Target Device 4**")

   (collectively, the "**Target Devices**").

   These searches support an investigation conducted by HSI, in conjunction with the Internal Revenue Service Criminal Investigation (IRS-CI), the San Diego Human Trafficking Task Force (SDHTTF), the San Diego District Attorney's Office (SDDA), the Escondido Police Department (EPD), and the

Tempe (Arizona) Police Department (TPD), of Peter GRIFFIN (GRIFFIN), Kyung Sook HERNANDEZ (HERNANDEZ), Yoo Jin OTT (OTT), and Yu Hong Tan (TAN) (collectively, the "defendants"), who are charged in an indictment issued on August 9, 2022, with the crimes mentioned above.[1] The **Target Devices** are all in the possession of HSI. A factual explanation supporting probable cause follows.

2. **Target Devices 1 and 2** were seized on August 11, 2022, during GRIFFIN's arrest.

3. **Target Device 3** was seized on August 11, 2022, during HERNANDEZ's arrest.

4. **Target Device 4** was seized on August 17, 2022, during OTT's arrest.

5. Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1, B-2, B-3, and B-4.

6. The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of obtaining search warrants for the **Target Devices**, it does not set forth each and

---

[1] GRIFFIN and TAN are also charged with violations of Title 18, United States Code, Sections 1343 and 1349 (conspiracy to commit wire fraud and wire fraud), Section 1014 (false statement to a mortgage lender), and Section 1957 (money laundering).

every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause.

**EXPERIENCE AND TRAINING**

7. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Titles 18 and 21 of the United States Code.

8. I am a Special Agent (SA) employed by the Department of Homeland Security, Immigration and Customs Enforcement, HSI. I am a Special Agent with Homeland Security Investigations ("HSI") of the Department of Homeland Security ("DHS") and have been so employed since April 2009. I am currently assigned to the HSI Human Trafficking Unit in Oceanside, California. I have experience and have received training in the areas of alien smuggling, sex and labor trafficking, money laundering, visa fraud, and related crimes. I also have experience obtaining and executing arrest and search warrants. As part of my current duties, I investigate and regularly communicate with other law enforcement officers who investigate criminal violations relating to sex and labor trafficking, money laundering, visa fraud, interstate and foreign travel and transportation in aid of racketeering (ITAR), alien harboring, the transporting of individuals in interstate commerce for purposes of commercial sex, and related crimes.

9. Based on my training and experience, I am familiar with, and have participated in investigations and search warrants, involving massage spas and parlors offering commercial sex services. I am therefore familiar with methods of investigating these organizations and know how these businesses operate.

10. My experience as an HSI Special Agent has included the investigation of cases involving the use of cellular telephones, computers, and

3

the internet to commit crimes. I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of search warrants involving the search and seizure of cellular telephones and other electronic devices.

11. Through my training, experience, and consultation with other law enforcement officers, I have learned that:

a. Individuals involved in illicit massage businesses (IMBs)—or entities that offer commercial sex services under the guise of providing legitimate massages—maintain records, including electronic files, related to their illicit business(es) on cellular telephones, including on smartphones with internet applications such as electronic mail (email) and personal social networking applications;

b. Individuals involved in IMBs often solicit customers through online advertisements, including on Backpage, Craigslist, CityXGuide, Backpage affiliates, MegaPersonals, Skipthegames, and other websites accessed on cellular telephones;

c. Individuals involved in IMBs often monitor customer reviews specific to IMBs posted on websites such as Rubmaps[1] and Rubratings, accessed on cellular telephones;

d. Individuals involved in IMBs often maintain records relating to customer contact information and communicate with customers via their cellular telephones;

---

[1] Rubmaps.com is a website where individuals who purchase an account can post, read, and comment on reviews of IMBs, which include details about the business and graphic descriptions of commercial sex services received.

4

e. Individuals involved in IMBs often maintain documents and files, including on their cellular telephones, containing names of associates and/or coconspirators involved in the illicit business(es);

f. Individuals involved in IMBs often maintain financial records, bank statements, receipts, and evidence of payments made in conjunction with commercial sex, including on their cellular telephones and online banking services thereon;

g. Individuals involved in IMBs use cellular telephones, often maintained on their person and/or in their residences and/or vehicles, to recruit and hire women to work in the business(es), access and monitor video footage of the business(es) through smartphone applications, communicate with customers and prospective customers, manage finances related to the business(es), warn each other and others about potential law enforcement activity (e.g., undercover operations, regulatory inspections), and to communicate generally with each other and others about the illicit business(es).  Individuals involved in IMBs will often use multiple cellphones in relation to the operation of their illicit business(es).  These electronic devices contain wire and electronic data concerning telephonic contact records, text messages, and email messages with co-conspirators and customers, as well as telephone books containing contact information for co-conspirators and customers.  Individuals involved in IMBs may also utilize cellular telephones with photograph and video capabilities to take photographs and videos of themselves as well as other coconspirators for the purpose of electronic advertising and promotion of commercial sex; and

h. Individuals involved in IMBs often use social media sites, including but not limited to Kakao Talk, WeChat, Facebook, and Instagram, to recruit employees, communicate about the IMBs and contact customers/prospective customers.  These social media accounts contain electronic data concerning

5

instant messaging, email and social media addresses of co-conspirators and customers, including contact information for co-conspirators and customers.

12.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, there is probable cause that evidence of illegal activity described above in paragraphs "a" through "h" is maintained by individuals involved in IMBs in or accessible through their cellular telephones.

## FACTS IN SUPPORT OF PROBABLE CAUSE

13.     In late 2019, HSI and the San Diego Human Trafficking Task Force (SDHTTF) began investigating GRIFFIN based on information provided by the TPD that GRIFFIN was associated with numerous IMBs in Arizona and California. Prior to that, the TPD had conducted its own investigation into a Tempe, Arizona-based business, Massage W Spa, for prostitution-related offenses. According to TPD, it determined that Massage W Spa was an IMB owned and operated by GRIFFIN and his associates.

14.     In conjunction with SDHTTF and other law enforcement agencies, HSI subsequently conducted a years-long federal investigation into GRIFFIN. Utilizing and analyzing registration records, permits, business licenses, ownership documents, bank accounts, utility accounts, surveillance, court-authorized GPS tracking devices, and spa advertisements, the investigation established that GRIFFIN was associated with dozens of IMBs in the greater San Diego area. The investigation focused specifically on GRIFFIN's network of IMBs in San Diego and the managers he worked with to operate those businesses: (1) Genie Oriental Spa, managed by HERNANDEZ; (2) Felicita Spa, managed by HERNANDEZ; (3) Maple Spa, managed by OTT; and (4) Blue Green Spa (aka Bonita Spa), managed by TAN. In addition, HSI continued to investigate

GRIFFIN's involvement with Massage W Spa in Tempe, Arizona, which was owned by GRIFFIN and managed by OTT.

15.   The investigation revealed that GRIFFIN was the registered owner of four out of the five IMBs listed above; HERNANDEZ was the registered owner of Genie Oriental Spa.  Among other things, GRIFFIN handled the businesses' finances, paid the rent and utilities at the businesses, communicated on behalf of the businesses with law enforcement and regulatory agencies, and worked with his co-conspirators to promote and facilitate the businesses generally.  HERNANDEZ, OTT, and TAN worked as managers of the above-listed IMBs.  As managers, HERNANDEZ, OTT, and TAN handled the day-to-day operation of the businesses, including, among other tasks, hiring women to work in the businesses and collecting "house fees," fees paid by customers to the spa upon entrance.

16.   On September 8, 2020, law enforcement executed court-authorized search warrants for email accounts associated with GRIFFIN (griffinpi@juno.com) and HERNANDEZ (kyungsookhernandez@gmail.com), and, on September 23, 2020, law enforcement executed court-authorized premises search warrants on Genie Oriental Spa, Felicita Spa, Maple Spa, Blue Green Spa, GRIFFIN's residence, TAN's residence, OTT's residence, and five of the targets' vehicles.  The evidence resulting from those search warrants included, in addition to email communications between co-conspirators, numerous cellular telephones, tablets, and electronic devices, indicia of commercial sex, and voluminous records relating to the operation of the network of IMBs.

17.   A subsequent review of the targets' electronic devices seized and searched pursuant to the premises search warrants revealed that GRIFFIN, OTT, HERNANDEZ, and TAN used cellular telephones, specifically smartphones and

7

the applications thereon, in connection with their operation of the IMBs and to communicate with each other, associates, spa employees, prospective customers, and customers, including about evading potential law enforcement activity and regulatory inspections, managing spa finances, recruiting, hiring, and managing spa employees, commercial sex services, Rubmaps reviews, and advertisements. The targets also used cellular telephones to pay bills related to the IMBs, access online banking applications and services, access emails related to the businesses, and use online translation services to communicate with others.

18. In addition, communications extracted from the electronic devices seized on September 23, 2020, as well as statements made by cooperative Massage W Spa employees to law enforcement showed that, following a state search warrant conducted by the TPD at Massage W Spa on November 13, 2019, GRIFFIN and OTT used their cellular telephones and email to discuss how they should respond to the execution of the warrant and to communicate with employees of Massage W Spa and Maple Spa, including asking what evidence law enforcement found at the spa and specifically asking whether law enforcement had found condoms at the spa.

19. GRIFFIN, HERNANDEZ, TAN, and OTT continued to operate some of the IMBs even after the execution of the federal search warrants on September 23, 2020. HERNANDEZ continued to operate Genie Oriental Spa until May of 2022, when its name was changed to Eli Acupressure. HERNANDEZ continued to work and reside at the spa, where she was ultimately arrested on August 11, 2022, and **Target Device 3** was seized. GRIFFIN and TAN continued to own and manage Blue Green Spa up until they were arrested on August 11, 2022, and **Target Device 1** and **Target Device 2** were seized from GRIFFIN. TAN was arrested at Blue Green spa. Finally, GRIFFIN and OTT continued to own and manage Maple Spa until February 2021, at which point

GRIFFIN incorporated the spa under the new corporate name, Loyal Spa, Inc. OTT was ultimately arrested outside Loyal, Spa, Inc., on August 17, 2022, and **Target Device 4** was seized.

20. On August 9, 2022, a federal Grand Jury sitting in the Southern District of California returned an indictment charging GRIFFIN, HERNANDEZ, TAN, and OTT with the offenses below, finding probable cause that the defendants had used cellular telephones to promote, manage, establish, or facilitate the IMBs:

| Count | Offense Charged | Defendants |
|---|---|---|
| 1 | Conspiracy to Commit Interstate Travel in Aid of Racketeering ("ITAR" or "Travel Act"), 18 U.S.C. § 371 | Griffin, Tan, Hernandez, Ott |
| 2-15 | ITAR, 18 U.S.C. § 1952 | Griffin, Tan, Hernandez, Ott |
| 16 | Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349 | Griffin and Tan |
| 17 | Wire Fraud, 18 U.S.C. § 1343 | Griffin |
| 18 | False Statement to Mortgage Lender, 18 U.S.C. § 1014 | Griffin and Tan |
| 19-22 | Laundering in Monetary Instruments, 18 U.S.C. § 1957 | Griffin and Tan |

21. On August 10, 2022, federal arrest warrants were issued for GRIFFIN, TAN, HERNANDEZ, and OTT.

22. On the morning of August 11, 2022, HSI and other law enforcement agencies arrested GRIFFIN after he was pulled over near his house, located at

10817 Via Cascabel Drive, San Diego, California. **Target Device 1** and **Target Device 2** were seized from GRIFFIN incident to his arrest. Specifically, **Target Device 1** was found on GRIFFIN's person and **Target Device 2** was located on the passenger seat of GRIFFIN's vehicle. GRIFFIN was the sole occupant of the vehicle.

23. On August 11, 2022, at approximately 10:00 a.m., HSI and the SDHTTF arrested HERNANDEZ at Eli Acupressure, formerly Genie Oriental Spa, located at 3395 El Cajon Boulevard, San Diego, California. **Target Device 3** was seized from HERNANDEZ incident to her arrest. Specifically, HERNANDEZ asked to retrieve a phone number from her cellular telephone and directed law enforcement to **Target Device 3**, located in the bedroom. HERNANDEZ unlocked the cellular telephone herself and wrote down a phone number. HERNANDEZ then asked an adult male present in the spa to call two individuals, Peter and Harry, on her behalf and gave him their respective phone numbers. The phone number HERNANDEZ relayed to the adult male for Peter was (619) 990-1793, which is a phone number that law enforcement has identified as belonging to GRIFFIN.

24. On August 17, 2022, HSI arrested OTT outside Loyal Spa, Inc., located at 8931 Campo Road, Spring Valley, California 91977. **Target Device 4** was seized from OTT incident to her arrest. Specifically, OTT asked to retrieve phone numbers from her cellular telephone and directed law enforcement to **Target Device 4**, located in the center console of her vehicle. OTT unlocked the device and retrieved two phone numbers.

25. Accordingly, based on the information provided above, there is probable cause to believe that GRIFFIN, HERNANDEZ, and OTT have committed crimes, specifically that they have violated 18 U.S.C. §§ 371 (conspiracy) and 1952 (ITAR); that GRIFFIN, HERNANDEZ, and OTT were

10

using the **Target Devices** seized from them respectively during their arrests; and that evidence, fruits, and instrumentalities of violations of federal criminal law will be found on each of the **Target Devices**. Specifically, there is probable cause to believe that the electronically stored information described in Attachments B-1, B-2, B-3, and B-4 (for the time periods set forth therein) will be found on the **Target Devices** described in Attachments A-1, A-2, A-3, and A-4.

## METHODOLOGY

26.   It is not possible to determine, merely by knowing the mobile electronic devices' make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Mobile electronic devices, including cellular telephones and tablets, can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, can have functions such as calendars and full address books, and can be mini-computers allowing for email services, web services and rudimentary word processing. An increasing number of cellular service providers and installable software now allow for their subscribers and users to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many mobile electronic devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some mobile electronic device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not

subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of these warrants, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and any memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

28. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this Court.

29. Finally, it is my understanding that some, if not all, of the defendants retained counsel following the execution of the search warrants on September 23, 2020. Therefore, in an abundance of caution, a filter team will initially review the electronically stored information obtained from the **Target Devices** to protect the attorney-client and work-product privilege of GRIFFIN, HERNANDEZ, and OTT. Attachment C sets forth the privilege review methodology that will be employed prior to prosecution team's review of any material extracted from the **Target Devices**.

## PRIOR ATTEMPTS TO OBTAIN DATA

29. Law enforcement has not previously attempted to obtain the evidence sought by these warrants.

## CONCLUSION

30. Based on the foregoing, I submit there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, 18 U.S.C. §§ 371 and 1952, as described in Attachments B-1, B-2, B-3, and B-4, will be found in the property to be searched, as described in Attachments A-1, A-2, A-3, and A-4.

31. I therefore respectfully request that this Court issue warrants authorizing me, an HSI Special Agent, or another law enforcement officer, to search the **Target Devices**, as described in Attachments A-1, A-2, A-3, and A-4, and seize the items listed in Attachments B-1, B-2, B-3, and B-4.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_S. Selga_
Salvadore F. Selga
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 8th day of September 2022.

_Allison H. Goddard_
HONORABLE ALLISON H. GODDARD
United States Magistrate Judge

**ATTACHMENT A-1**
**ITEMS TO BE SEARCHED**

The property/items to be searched is/are described as follows:

Samsung Smartphone

Model SM-F926U

("**Target Device 1**")

**Target Device 1** was seized from Peter GRIFFIN on August 11, 2022, and is currently being held at the HSI RAC Oceanside Office at 2420 W. Vista Way, Oceanside, CA 92054.

# ATTACHMENT B-1
# ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrants.

The evidence to be seized from the cellular telephone will be any and all electronic records, communications, and data such as emails, text messages, chats, including on applications (e.g., including but not limited to WeChat, Kakao Talk, and WhatsApp), translations, photographs, audio files, video, telephone numbers, contact information, web browsing history, documents, data stored within applications, and location data, for the period of September 23, 2020, to August 12, 2022:

a. tending to indicate efforts to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, and carrying on of illicit massage businesses engaged in commercial sex;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the illicit massage businesses;

c. tending to identify co-conspirators, criminal associates, or others involved in the illicit massage businesses;

d. tending to identify funding sources, bank accounts, and financing methods involved in the illicit massage businesses;

e. tending to show efforts to advertise or otherwise solicit customers to visit the illicit massage businesses;

f. tending to identify travel to or presence at locations used for commercial sex acts;

g. tending to identify the user of, or persons with control over or access to, the subject phone; and/or

    h.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 18, United States Code, Sections 371 and 1952.**

## ATTACHMENT C
## Filter Team Practices and Procedures

The Target Devices may contain attorney-client communications or attorney work product that is privileged. To protect those privileges a filter team will first review the Target Devices to remove any privileged information. The filter team will consist of agent(s) and prosecutor(s) not involved in the investigation or prosecution. The filter team shall not discuss with anyone outside the filter team privileged information that they learn through their review and will not be further involved in the investigation or prosecution except to litigate issues related to the filter review.

**Filter Agent Instructions**

1. Qualified personnel shall download but not examine the contents of the Target Device.

2. Filter agents shall search the download for information associated with attorneys or their staff. To aid the search, the prosecution team shall provide the filter team with law firms, attorneys, or staff known or believed to represent or work with the targets.

3. Filter agents shall remove to separate media 1) any communications between attorneys or their staff and an apparent client, and 2) any materials that appear related to existing or anticipated litigation ("the separate media"). Filter agents shall err on the side of removing materials that might meet the criteria above.

4. Filter agents shall create a log of all removed information that identifies each item, the type of item (e.g., email, text), the date of the item if one exists, and the location where it was found.

5. Filter agents shall give the filter AUSA the log and the separate media.

6. Filter agents shall create media containing the download from the Target Device, *minus* anything removed to the separate media ("the clean media"). Filter agents shall provide the clean media to the

prosecution team. The prosecution team shall review the clean media for, and seize, information within the scope of Attachment B-#.

**Filter AUSA Instructions**

7. The filter AUSA shall review each item in the separate media and record on the log whether the item is privileged, potentially privileged, or unprotected. The filter AUSA shall err on the side of deeming materials privileged or potentially privileged. After the filter AUSA's determinations:

   a. Filter agents shall copy unprotected items to media and give the media to the prosecution team. The latter will review the items to determine if they should be seized as within the scope of Attachment B-#.

   b. Filter agents shall copy privileged items to separate media and give the media to the privilege holder or their counsel. Nothing containing privileged items shall be provided to the prosecution team.

   c. Possibly privileged items shall be handled in any of these ways: 1) as set forth in paragraph 7.b, 2) the item shall be provided to counsel for the privilege holder to try and reach agreement about whether the item is privileged, or 3) the item shall be submitted under seal to the court for a determination as to whether the item is privileged and notice given to the privilege holder or their counsel of this action. If options 2 or 3 lead to a determination that the item is unprotected or privileged, the item shall be handled as set forth in paragraphs 7.a and 7.b respectively. Items initially deemed possibly privileged shall only be provided to the prosecution team if authorized by the court.

8. The filter AUSA shall record the disposition for each item on the log. A filter AUSA shall maintain the final completed log through the completion of the investigation or prosecution in a way that prohibits access by anyone outside the filter team.

**Final Instructions**

9. Filter agents (or the examiner in paragraph 1) shall seal the following when use and/or review of the item is complete, write on the outside "may contain privileged information; do not open," and store these in evidence consistent with agency procedures: 1) the Target Device, 2) the download of the Target Device, 3) the separate media. Only a filter AUSA may approve opening these items after they are sealed and placed in evidence.

10. Filter agents shall write "does not contain privileged information" on the outside of copies of the media created in paragraphs 6 (the clean media) and 7.a. (unprotected items) and store them in evidence consistent with agency procedures.

11. Filter agents shall write reports documenting their actions above. If no potentially privileged information is found on a Target Device, the report shall say that. Reports shall be provided to the filter AUSA who will provide them to the prosecution team.

12. At the end of the filter review, the filter AUSA shall give the prosecution team a written summary identifying the Target Device from which the filter AUSA reviewed material and whether privileged information was found.

If after and despite these procedures the prosecution team finds potentially privileged material on the Target Device, the prosecution team shall cease review, notify the filter team, and the filter team shall re-review the device as above.